UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JO CHARLES,

       Petitioner,

v.                            Case No. 8:09-cv-287-T-17TGW

ERIC H. HOLDER, JR.,[1] et al.,

       Respondents.

_____

## **O R D E R**

This cause is before the Court on Petitioner Jo Charles' 28 U.S.C. § 2241 petition for writ of habeas corpus filed February 17, 2009 (Doc. No. 1), and Respondent's response to the petition. (Doc. No. 5). Petitioner did not file a reply within the allotted time to do so, and did not seek an extension of time in which to file a reply to the response. A review of the record demonstrates that, for the following reasons, the petition must be **denied**.

## BACKGROUND

Petitioner Charles is a native and a citizen of Haiti. He entered the United States without inspection at an unknown place on an unknown date. (*See* Declaration of Nidia Almonte [Almonte Decl.], ¶3).[2] On September 13, 2002, Charles was convicted in Florida state court for the offenses of Burglary of a Dwelling, Grand Theft, and Possession of Cocaine with Intent to Sell. Charles was sentenced to four years incarceration. Almonte

---

[1] Eric H. Holder, Jr., has succeeded Michael B. Mukasey as Attorney General and should be substituted as respondent pursuant to Fed. R. Civ. P. 25(d).

[2] The Declaration of Nidia Almonte, a deportation officer employed by United States Immigration and Customs Enforcement in Tampa Florida, is attached to Doc. No. 5 as Exhibit 1.

Decl., ¶4.

United States Immigration and Customs Enforcement (ICE) placed Charles in removal proceedings, and on June 23, 2008, an Immigration Judge ordered him removed to Haiti. Almonte Decl., ¶5. Charles did not appeal the removal order and the order became final on July 23, 2008. Almonte Decl., ¶6. On August 5, 2008, upon the completion of his criminal sentence, Charles was transferred from state custody to ICE custody. Almonte Decl., ¶7. ICE requested a travel document for Charles and scheduled him for a removal flight to Haiti departing August 27, 2008. However, due to the consecutive tropical storms and hurricanes that affected the Gulf Coast and the Caribbean, removal of Haitian citizens was temporarily suspended. Almonte Decl., ¶¶8-9.

On October 17, 2008, ICE conducted a post-order custody review (POCR), and determined that Charles should remain in custody based in part on his foreseeable removal to Haiti. In February 2009, ICE conducted a second POCR and reached the same determination. Almonte Decl., ¶¶10-11.

On February 11, 2009, ICE submitted a request for a travel document for Charles. Almonte Decl., ¶12. On or about February 17, 2009, ICE announced that it would resume removal flights to Haiti. Almonte Decl., ¶13. Presently, a travel document has not been officially issued for Charles nor have removal flights recommenced travel to Haiti. ICE, however, foresees that the flights will begin in the foreseeable future. Almonte Decl., ¶14.

The Department of Homeland Security (DHS) maintains diplomatic relations with Haiti, and in fiscal year 2007 (the last year for which statistics are available), DHS removed approximately 1,492 Haitian nationals to that country. (See DHS Yearbook of Immigration Statistics: 2007, Table 37).

DISCUSSION

Charles's detention is governed by § 241(a) of the Immigration and Naturalization Act (INA), codified at 8 U.S.C. § 1231(a), which covers detention following entry of a final removal order. This provision generally affords the Attorney General a 90-day period to accomplish removal. See 8 U.S.C. § 1231(a)(1)(A)-(B). The Attorney General may continue to detain an alien after expiration of the 90-day removal period when the alien is:

> An alien ordered removed who is inadmissible under [INA] section 212, removable under section 237(a)(1)(c), 237(a)(2), or 237(a)(4) or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal . . .

8 U.S.C. § 1231(a)(6). Charles's continued detention is pursuant to § 1231(a)(6), in that he is removable due to his illegal entry into the United States and his criminal conviction. See Almonte Decl., ¶¶3-5.

As explained above, under 8 U.S.C. § 1231(a)(1), ICE has a 90-day "removal period" in which to remove an alien from the United States. The removal period commences on the latest of the following:

> (i) The date the removal becomes administratively final.

> (ii) If the removal order is judicially reviewed and if the court orders a stay of the removal of the alien, the date of the court's final order.

> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). Charles' removal period commenced August 5, 2008, the date Charles was taken into ICE custody. Almonte Decl., ¶7.

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that § 1231(a) permits the government to detain an alien during the 90-day removal period, and an

additional 90 days in order to effect the alien's removal from the United States. *See Zadvydas,* 533 U.S. at 701 (stating that "we doubt when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time"); *see Clark v. Martinez*, 543 U.S. 471 (2005); *see also Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("six months is a presumptively reasonable period to detain a removable alien awaiting deportation under such circumstances") (citing *Zadvydas*, 533 U.S. at 701).

The six-month presumption does not mean, however, that every alien not removed must be released after six months. *Zadvydas*, 533 U.S. at 701. "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Thus, "to state a claim under *Zadvydas,* the alien must not only show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale,* 287 F.3d at 1052.

Although Charles has satisfied *Akinwale's* first prong (the six-month period expired on February 1, 2009), he fails to meet the second prong. He provides no evidence to show "that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale*, 287 F.3d at 1052. Rather, he states that Haiti's president has requested that the United States not remove any Haitians for a three-year period. (Petition at 2). Although removal were temporarily suspended to facilitate Haiti's hurricane recovery effort, in February 2009, the Haitian government agreed to resume removal flights. Almonte Decl., ¶ 13.

Furthermore, the United States has not agreed to a three-year ban on removals to Haiti. DHS maintains diplomatic relations with Haiti and removed approximately 1,492 people to that country during fiscal year 2007. (2007 Immigration Yearbook, Table 37). ICE continues to effectuate the repatriation of Haitian nationals who have been ordered removed, and in Charles' case, has formally requested a travel document and provided the necessary information to obtain the document. Almonte Decl., ¶12.

ICE is waiting for the Haitian consulate to process the request and issue the travel document. Thus, it is clearly more likely than not that Charles will be removed to Haiti in the reasonably foreseeable future. *Edmund v. Gonzales*, No. 05-00347, 2007 WL 2187258, at *8 (N.D. Fla. July 27, 2007) (holding that petitioner failed to make *Zadvydas* showing where he could show no impediment to removal other than the pace at which his case was being processed by the receiving nation); *Chery v. Attorney General*, No. 8:08-cv-2300-T-33EAJ, 2009 WL 151104, at *3 (M.D. Fla. Jan. 21, 2009) (citing *Edmund).*   Accordingly, the Court orders:

That Charles' petition for writ of habeas corpus (Doc. No. 1) is denied.  The Clerk is directed to enter judgment against Charles and to close this case.

ORDERED at Tampa, Florida, on April 28, 2009.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Jo Charles